UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DOUGLAS F. EIGEMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PEPPERMILL CASINOS, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | 3:11-CV-219-RCJ-VPC <br><br> **ORDER** |

Currently before the Court are Defendant's Motion for Summary Judgment (#31); Plaintiff's Motion for a Conference with the Judge Prior to Granting Summary Judgment to Either Party (#36); Plaintiff's Motion for Summary Judgment (#37); and Motion to Sanction the Defendant (#41). The Court heard oral argument on May 29, 2012.

**BACKGROUND**

**I.     Complaint**

In March 2011, *pro se* Plaintiff Douglas F. Eigeman filed a civil rights complaint pursuant to 42 U.S.C. § 1983 in this Court. (Compl. (#4) at 1). He alleged one cause of action that Defendant Peppermill Casinos, Inc. ("Defendant" or "Peppermill") violated Title VII and the Age Discrimination Employment Act ("ADEA"). (*Id.* at 4). Plaintiff alleged the following. He was 68 years old and the Peppermill had discriminated against him based on age by denying him the equal terms and conditions of his employment and by discharging him. (*Id.* at 13). He had worked as an internal auditor at the Peppermill from June 11, 2007, through August 18, 2009. (*Id.*). Plaintiff had three supervisors, Barbara Santavasci, Erik Fields, and David Mueller. (*Id.*). Fields had given Plaintiff an outstanding review on June 11, 2009. (*Id.*).

1  However, Mueller had not given Plaintiff a very good review.  (*Id.*).  After Plaintiff tried to
2  explain to Mueller that the items Mueller was criticizing Plaintiff on were immaterial, Mueller
3  began to retaliate.  (*Id.*).  On August 17, 2009, Mueller refused to talk with Plaintiff.  (*Id.*).  That
4  same day, Mueller called casino security and told them that Plaintiff was threatening him.  (*Id.*).
5  Mueller and the human resources representative, Michelle Manning, had fired Plaintiff based
6  on a lie that Plaintiff had threatened Mueller.  (*Id.*).  Plaintiff thought Defendant had fired him
7  because his health insurance was too expensive due to his age.  (*Id.*).  Previously, Mueller had
8  told Plaintiff that he and Manning were trying to get Santavasci fired.  (*Id.*).  The Peppermill
9  dismissed Santavasci the month she turned sixty-six.  (*Id.*).   None of Plaintiff's three
10 supervisors–Fields, Mueller, or Santavasci–had ever disciplined him.  (*Id.*).  Plaintiff sought
11 relief in the amount of $170,832.81, his salary computed at what he was earning at the time
12 Defendant dismissed him.  (*Id.* at 9).

13        In September 2011, this Court dismissed Plaintiff's Title VII claim without leave to
14 amend, but found that Plaintiff had stated a claim for age discrimination under the ADEA, 29
15 U.S.C. § 623(a).  (Order (#17) at 4).

16 **II.    Summary Judgment Facts**

17        Plaintiff testified to the following at his deposition.  (Eigeman Depo. (#31-2) at 3).  He
18 was born on January 26, 1941.  (*Id.*).  He had interviewed with Barbara Santavasci for the job
19 at the Peppermill and was hired as an internal auditor on June 11, 2007.  (*Id.* at 3-5).
20 However, internal auditors did not do internal auditing, but instead did gaming law compliance.
21 (*Id.* at 4).  As an internal auditor, Plaintiff went to various departments to determine whether
22 the departments were complying with gaming regulations.  (*Id.*).  When he started at the
23 Peppermill, his supervisor was Erik Fields.  (*Id.*).  When Plaintiff started at the Peppermill,
24 Fields was a senior accountant and then became the director when Santavasci left in January
25 2009.  (*Id.*).  Santavasci would make a list for Plaintiff of the things he had done wrong, or
26 audit points, and Plaintiff would go back and correct them.  (*Id.*).

27        Plaintiff testified to the following.  In August 2009, Fields and David Mueller presented
28 Plaintiff with a performance review.  (*Id.* at 6).  During the deposition, Plaintiff claimed that the

review was a forged copy. (*Id.* at 7). Plaintiff admitted that the review contained both his and Field's handwriting and also contained his signature. (*Id.*). Plaintiff believed the review was doctored because when he had left the evaulation that day, he "felt in high esteem." (*Id.*). He thought that this review had been doctored by Mueller and Michelle Manning to make him look bad. (*Id.*). The ratings contained two of the lowest ratings and two of the highest ratings and Plaintiff stated, "[t]here was no possible way that my ratings were this." (*Id.*).

Plaintiff testified to the following. After Santavasci left, Fields reviewed Plaintiff's work and had made "more audit points than [Plaintiff] could count." (*Id.* at 8). When Fields was the director, Fields had stated that Plaintiff had made errors in his audits and wrote them up in a report. (*Id.*). During the Friday, August 14, 2009 evaluation, Mueller had been "very, very, very petty." (*Id.* at 8, 10). Mueller told Plaintiff that Plaintiff had not properly done an $8,000 value on a promotion and that Plaintiff had spoken to the boss of the poker room instead of talking to the accounting person. (*Id.* at 9). During the evaluation, Plaintiff asked Mueller if Mueller would consider traveling and expressed his opinion that Mueller should travel. (*Id.*). Mueller stated that his daughter required him to be in town all the time. (*Id.*). Plaintiff stated that "his daughter [was] an adult" and that she had "a mother." (*Id.*).

Plaintiff testified to the following. On Monday, August 17, 2009, he had come to work and then went to Mueller's office to ask Mueller for a copy of a newspaper article about a fine on Mueller's wall. (*Id.* at 10). Plaintiff had carried papers about his family into Mueller's office because during the August 14th evaluation Mueller commented that calling Slavek, another employee, a "Polish prince" was a racial slur. (*Id.* at 10-11). Plaintiff stated that Slavek had said that Plaintiff was Jewish. (*Id.* at 11). Plaintiff said he could prove he was not Jewish and had a cousin in 1400s Switzerland and that they were all Catholics. (*Id.*). On August 17th, Plaintiff went to Mueller's office carrying papers about his family and asked for the newspaper article. (*Id.* at 10, 12). Mueller responded that he did not want to have anything to do with Plaintiff and shoved the documents off of his desk. (*Id.* at 12). After Mueller pushed the papers off the desk, Plaintiff called Mueller a "phony" and said "why don't you hit me, I'm 69 years old." (*Id.* at 13). Plaintiff said that to Mueller because Mueller had come around from

3

his desk and Plaintiff thought that Mueller was going to hit him. (*Id.*). Plaintiff also said, "go ahead and hit me" and "I don't normally pick fights with people younger than me, and I haven't picked a fight in a long time." (*Id.*). Plaintiff also said, "you're a big shot, fire me." (*Id.*). Plaintiff told Mueller to fire him because "that's what [Mueller] wanted to do." (*Id.*). Plaintiff stated that he had provoked Mueller during that meeting because Mueller was mad. (*Id.* at 14).

Plaintiff testified to the following. (*Id.*). Mueller had called security. (*Id.*). During the meeting with security, Plaintiff told them that Mueller did not travel anywhere, smoked a couple hours a day, and had no respect for anybody but himself. (*Id.*). Plaintiff disrespected Mueller because Mueller would not travel. (*Id.*). After Plaintiff had met with security on August 17th, he met with Fields and Manning. (*Id.* at 14-15). Plaintiff told them that Mueller did not travel and Manning responded that Mueller's personal matters were not any of his concern. (*Id.*). Plaintiff told Manning that he had gone to Mueller's office to give Mueller proof that he was not a Jew. (*Id.* at 15). Manning suspended Plaintiff. (*Id.*).

Plaintiff testified to the following. (*Id.*). During the afternoon of August 17th, Plaintiff called Fields and said "I guess this means I'm done." (*Id.* at 16). Fields said "yeah, come in and get your things." (*Id.* at 17). Plaintiff picked up his belongings on August 18th and signed his termination form. (*Id.*). Plaintiff felt that Mueller had wanted him fired because Plaintiff "knew how little work he did" and "knew his daughter was an adult." (*Id.* at 18). Plaintiff admitted that he did not know what Mueller's August 14th evaluation said because Plaintiff "didn't really read [Mueller's]" because he "considered it immaterial in the scope of a year's work." (*Id.*). Plaintiff felt that Mueller wanted Plaintiff out of there because Plaintiff "knew [Mueller] was a phony" and knew that he did not work. (*Id.*).

Plaintiff testified to the following. He had never complained of age discrimination during his employment. (*Id.* at 22). He claimed that he had been discriminated based on his age because he "did more work than the people that were . . . older. And . . . [he] spent a lot of time with these age discrmination people, and they're the ones that encouraged [him] to, to file all this stuff." (*Id.*). Plaintiff stated that the Equal Employment Opportunity Commission

4

had encouraged him to file an age discrimination charge by giving him all of the forms. (*Id.* at 22-23). Plaintiff was 66 years old when the Peppermill hired him. (*Id.* at 23). Plaintiff felt that his age discrimination claim was supported by the fact that he was willing to travel when a person far below his age would not travel and because he worked harder than the kids that he worked with other than Fields. (*Id.*).

The Peppermill Employee Handbook stated that the Peppermill was committed to non-discrimination and directed employees to report any retaliation to his or her supervisor or any other company supervisor, manager, division director, employee relations manager, or director of human resources. (Employee Handbook (#31-2) at 27). The Employee Handbook also prohibited conduct such as "[b]eing rude, discourteous or offensive to guests, supervisors, or fellow Employees." (*Id.* at 30). Such conduct could lead to "corrective disciplinary action up to and including termination, as management deem[ed] appropriate." (*Id.* at 31). Plaintiff signed an acknowledgment that he had received this handbook on June 6, 2007. (*Id.* at 32).

The August 14, 2009 performance evaluation signed by Plaintiff, Fields, and Mueller stated the following. (August 2009 Performance Evaluation (#31-2) at 36-37). Plaintiff received a below expectation mark for interpersonal skills/attitude. (*Id.* at 36). The review stated that Plaintiff needed "to take the initiative in finding work, help with others work. When expressing opinions, sometimes comes across in a threatening manner as opposed to calm, constructive voice." (*Id.*). Plaintiff received a below expectation mark for technical skills. (*Id.*). The review stated that Plaintiff was "not properly preparing to perform the audit . . . need[ed] to work at gaining additional knowledge of IT systems." (*Id.*). Plaintiff received two "met expectations" marks for attendance/punctuality and appearance. (*Id.*). The supervisor's comments box stated, "I have noticed more commitment from [Plaintiff] the past couple of weeks–more positive. I would like to see [Plaintiff] ask more questions when he is not sure about [something] while performing audits. I believe this would help eliminate audit points." (*Id.* at 37). In the employee comments, Plaintiff wrote "[t]his entire operation was a brand new concept to me. I know accounting, this is compliance, which is not only not understood but under [Stansavasci] I was told we don't 'spoon feed our employees.' This is a better place

5

today and I appreciate the effects of [Fields] and [Mueller]." (*Id.*).

In the first statement that Plaintiff wrote for security on August 17, 2009, Plaintiff stated the following. (First Security Statement (#31-2) at 41; Eigeman Depo. (#31-2) at 15). Plaintiff went to Mueller's office at 7:00 a.m. and asked if he could get the newspaper article about the Peppermill being fined. (First Security Statement (#31-2) at 41). Mueller responded, "I have nothing for you." (*Id.*). Plaintiff then laid documents on Mueller's desk and Mueller shoved those to the floor. (*Id.*). Plaintiff told Mueller, "you're a phony" and Mueller said something to the effect that Plaintiff was "crazy." (*Id.*). Plaintiff replied, "You're a big shot, fire me." (*Id.*).

In the second statement that Plaintiff wrote for security on August 17, 2009, which he wrote fifteen minutes later, Plaintiff stated the following. (Second Security Statement (#31-2) at 42; Eigeman Depo. (#31-2) at 16). After Mueller shoved the papers to the floor, Plaintiff went to pick up the papers and Mueller "began coming around his desk." (Second Security Statement (#31-2) at 42). Plaintiff told Mueller "hit me I'm 68 years old, you're a phony." (*Id.*). Then Mueller said something to the effect that Plaintiff was crazy and Plaintiff replied, "You're a big shot, fire me." (*Id.*).

On August 17, 2009, Plaintiff signed a form stating that he was "being suspended pending investigation due to an incident and a following discussion with management." (Suspension Form (#31-3) at 2). On August 18, 2009, Plaintiff signed his termination form stating that he was being terminated for "poor performance and inappropriate behavior." (Termination Form (#31-3) at 4).

In her declaration, Michelle Manning stated the following. (Manning Decl. (#31-4) at 1). She had been the Director of Human Resources for the Peppermill since April 2008. (*Id.*). On August 17, 2009, Senior Auditor David Mueller called her regarding an incident with Plaintiff. (*Id.*). Mueller stated that Plaintiff had come into his office that morning and had acted in a threatening manner and that he had called security. (*Id.*). Manning had met with security who indicated that Plaintiff had been "uncooperative and excitable during his meeting with them, but [had] denied any confrontational or threatening behavior toward Mueller." (*Id.* at 1-2). Plaintiff had told security that he was upset with Mueller for not traveling to Wendover and for

6

smoking ten to twelve hours a day. (*Id.* at 2). Fields had told Manning that Plaintiff was having performance problems and that Plaintiff had received a poor performance from he and Mueller the Friday before. (*Id.*). She and Fields had met with Mueller to further investigate the situation and they had "difficulty talking to [Plaintiff] because he would not listen, continually interrupted, and redirected the conversation to irrelevant topics." (*Id.*). Plaintiff had told them that he was frustrated with Mueller because he did not travel and had started talking about Mueller's daughter and her medical condition. (*Id.*). Manning told Plaintiff that Mueller's personal matters were irrelevant and that Fields, as the department leader, made the ultimate decision about who traveled. (*Id.*). After acquiring Mueller's version of the facts, Manning met with Vice President of Administration Denise Vessie and they made the ultimate decision to terminate Plaintiff based on the fact that he was "a poor performer, who had behaved inappropriately and insubordinately, and who showed an inability to acknowledge or understand his problems." (*Id.* at 4).

In his declaration, Erik Fields, Director of Internal Audit, stated the following. (Fields Decl. (#31-5) at 1). Fields was Plaintiff's direct supervisor during employment. (*Id.*). Although Fields personally liked Plaintiff, "[Plaintiff] often expressed his opinions in a confrontational and unprofessional manner, and he had performance problems." (*Id.*). When Fields had been promoted to Director of Internal Audit in February 2009, Mueller became the Senior Auditor and also supervised Plaintiff. (*Id.* at 2). Mueller and Fields had jointly prepared, completed, and approved Plaintiff's August 2009 review. (*Id.*). They wanted to convey to Plaintiff that he "had serious performance problems, and needed to vastly improve, as prior efforts to informally convey this to [Plaintiff] had not been successful." (*Id.*). Fields stated that the review was not doctored and that the review was the same one that Plaintiff had been presented with on August 14, 2009. (*Id.* at 2-3).

## LEGAL STANDARD

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows

7

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

**I.    Defendant's Motion for Summary Judgment (#31)**

Defendant asserts that Plaintiff's claim of age discrimination fails as a matter of law

8

because he cannot establish a prima facie case for age discrimination. (Mot. for Summ. J. (#31) at 13). Defendant asserts that Plaintiff cannot establish that he was performing his job in a satisfactory manner and cannot establish that he was replaced by a substantially younger employee or that any younger employee with similar performance issues was treated more favorably. (*Id.*).

In response, Plaintiff objects to the motion for summary judgment. (Obj. to Mot. for Summ. J. (#33) at 1). Plaintiff states that his annual evaluation was a fabricated document and that Defendant will never be able to produce an original document to support that evaluation. (*Id.*). Plaintiff also objects to Defendant providing excerpts of his deposition rather than providing the whole document. (*Id.* at 2). Plaintiff thinks that Defendant's attorney should be sanctioned for providing excerpts of the deposition. (*Id.*).

In reply, Defendant argues that Plaintiff's objections are without merit because Plaintiff's own testimony established that he had performance problems. (Resp. to Obj. to Mot. for Summ. J. (#34) at 1). Defendant asserts that Plaintiff was terminated based on the performance review but also on the totality of the facts after the incident with Mueller and HR's investigation into the incident. (*Id.* at 2).

The Age Discrimination in Employment Act ("ADEA") makes it unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The Court evaluates ADEA claims that are based on circumstantial evidence of discrimination using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008). Under this framework, the employee must first establish a prima facie case of age discrimination. *Id.* A plaintiff can establish a prima facie case of disparate treatment by demonstrating that he was "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Id.* "An inference of discrimination can be established by showing the employer had a continuing need for the employees' skills and services in that their

various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably." *Id.* at 1207-08 (internal quotations and alterations omitted).

In this case, Plaintiff fails to establish a prima facie case for age discrimination because he fails to demonstrate that he was performing his job satisfactorily and that he was replaced by substantially younger employees with inferior qualifications or discharged under circumstances giving rise to an inference of age discrimination. As Plaintiff's deposition shows, even if he disagrees with the authenticity of the performance evaluation, he testified that Fields had made "more audit points than [Plaintiff] could count." (*See* Eigeman Depo. (#31-2) at 8). Thus, Plaintiff acknowledged his performance problems. Additionally, Fields's declaration confirms Plaintiff's performance problems. Moreover, Plaintiff's own deposition demonstrates that he was not performing his job satisfactorily on August 17, 2009, because he was rude, discourteous, and offensive to Mueller when he called Mueller a "phony," "you're a big shot, fire me," and "go ahead and hit me." This behavior was in contravention to the Employee Handbook. As such, Plaintiff was not performing his job satisfactorily at the time of his termination.

Moreover, there is no evidence in the record that Plaintiff had been replaced by a substantially younger employee with inferior qualifications. Additionally, there is no evidence in the record that Plaintiff had been discharged under circumstances giving rise to an inference of age discrimination. In fact, Plaintiff believes that he was terminated, not based on his age, but because he knew how little Mueller worked and that Mueller's daughter was an adult. (*See* Eigeman Depo. (#31-2) at 18). Therefore, Plaintiff fails to establish a prima facie case for age discrimination and the Court GRANTS Defendant's motion for summary judgment (#31) in its entirety with prejudice.

**II.     Plaintiff's Motion for a Conference with the Judge (#36)**

Plaintiff asserts that his performance evaluation is not a true document or an original document. (Mot. for Conference (#36) at 1). Plaintiff asserts that Defendant's attorney should be sanctioned for carrying on the case without any solid evidence. (*Id.*). Plaintiff also asserts

that Defendant's motion for summary judgment exhibits are immaterial or without merit.  (*Id.* at 2).

Defendant responds that Plaintiff's motion raises a number of irrelevant and misguided arguments.  (Resp. to Mot. for Conference (#39) at 1).

The Court finds that Plaintiff's motion is without merit because the exhibits comply with Fed. R. Civ. P. 56(c).  The Court denies the Motion for a Conference with Judge (#36).

**III.    Plaintiff's Motion for Summary Judgment (#37)**

Plaintiff's motion for summary judgment is incoherent and argues that the Seeno Family, who owes the Peppermill, has a history of racketeering.  (Mot. for Summ. J. (#37) at 1-2).  Plaintiff also makes allegations that he never had any problems with Mueller until August 17, 2009, that Fields is a sick man because he is willing to commit perjury to help his job security, and that Manning had "no business butting into Internal Audit business."  (*Id.* at 2).  Plaintiff also asserts that Defendant's attorney needs to be sanctioned because her interrogatories were harassing, she edited the deposition, and she did not take the time to tie the exhibits to the deposition.  (*Id.* at 3).  Plaintiff then attaches documents pertaining to the ownership of the Peppermill and articles about the Seeno Family.  (*Id.* at 5-21).

In response, Defendant asserts that Plaintiff's motion, filed February 9, 2012, is untimely because all dispositive motions were due by January 23, 2012.  (Opp'n to Mot. for Summ. J. (#1-2).  Defendant argues that Plaintiff has failed to produce any evidence of age discrimination.  (*Id.* at 2).

The Court denies Plaintiff's motion for summary judgement (#37) because he provides no evidence that Defendant terminated him based on age discrimination.

**IV.    Motion to Sanction the Defendant (#41)**

Plaintiff seeks sanctions against Defendant's attorney because she used "dirty tricks" in mailing documents to Plaintiff because the envelope was crumpled.  (Mot. to Sanction (#41) at 1).  Plaintiff attaches a copy of an envelope and a letter from Bonanza Reporting-Reno, LLC informing Plaintiff that his deposition was ready for reading and signing.  (*Id.* at 2-3).

In response, Defendant asserts that Plaintiff's motion fails to comply with Fed. R. Civ.

11

P. 11(c)(2) because Defendant did not serve the motion to Defendant prior to filing it with the Court. (Opp'n to Mot. for Sanctions (#43) at 1). Defendant also states that the letter was from Bonanza Reporting and, thus, is not a letter from Defendant. (*Id.* at 2).

Plaintiff filed an incoherent reply. (Comments to Opp'n to Mot. for Sanctions (#44) at 1).

The Court finds that the motion is without merit and denies the Motion for Sanctions (#44).

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment (#31) is GRANTED in its entirety with prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion for a Conference with the Judge Prior to Granting Summary Judgment to Either Party (#36) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (#37) is DENIED.

IT IS FURTHER ORDERED that the Motion to Sanction the Defendant (#41) is DENIED.

DATED: This 6th day of July, 2012.

_____
United States District Judge